IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA HARBECK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 5120 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| BAXTER HEALTHCARE ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Donna Harbeck, sues defendant, Baxter Healthcare Corporation ("Baxter"), her former employer, for retaliation for complaining about discrimination on the basis of sex and age under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. This case is before the Court on defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the motion.

## BACKGROUND

In June 2015, Baxter, a company that develops and manufactures healthcare instruments and equipment, hired plaintiff, a forty-nine-year-old woman, as a Manager of Business Operations. (Def.'s LR 56.1 Stmt. ¶¶ 1-3, ECF No. 71.) Plaintiff worked in the Knowledge Management Department, where her job was to support Vice Presidents David Lambert and Greg Boyer and the renal sales organization by reporting sales information. (*Id.* ¶¶ 4-5.)

On November 6, 2015, plaintiff attended a budget meeting at which Finance Vice President John Quick stated that the Knowledge Management Department's budget numbers were wrong, were not to be used to report performance goals for the renal sales force, and were

to be removed from plaintiff's reports effective immediately.  (*Id.* ¶¶ 9-11.)  Immediately after the meeting, Mary Lou Merryman, Director of Incentive Compensation, grabbed plaintiff's arm, shook it, and yelled at plaintiff, "you can't report on my numbers!"  (*Id.* ¶ 18.)  Merryman continued to walk with plaintiff and, as they walked away from the conference room in which the meeting had been held, grabbed plaintiff's arm and yelled at her again.  (*Id.* ¶ 19.)

According to Merryman and Todd Mundinger, Senior Manager of Commercial Reporting, to whom plaintiff reported directly, plaintiff had become upset at the point in the meeting when she was told to remove budget numbers from her reports.  (*Id.* ¶ 13.)  Mundinger claims that plaintiff later told him that she believed that the removal of reporting on budget numbers from her responsibilities showed that her job was at risk, but Mundinger reassured her that there was no need for any such concern because there were other aspects of reporting, apart from the budget, that she could focus on.  (*Id.* ¶¶ 13-14.)  Additionally, according to Mundinger, he told plaintiff that her conduct during the meeting may have left high-level attendees with a negative impression of plaintiff, but the damage was not irreversible.  (*Id.* ¶ 14.)

Plaintiff denies that she was worried about losing her job based on the events of the November 6, 2015 meeting.  (Pl.'s LR 56.1 Resp. ¶¶ 12-14, ECF No. 73.)  But there is no dispute that she was upset by Merryman's behavior, which she reported to Human Resources ("HR").  (Def.'s LR 56.1 Stmt. ¶¶ 20-25.)  The report to HR seemed to heighten tensions between the Knowledge Management and Incentive Compensation departments.  (*Id.* ¶¶ 23-24.)  HR investigated the incident and concluded that, while Merryman had not touched plaintiff in an aggressive way, she should not have touched plaintiff at all, and it placed a written warning in Merryman's personnel file.  (*Id.* ¶ 25.)

Of the three Renal Senior Business Operations Analysts—Sue Tendering, Jason Strollo, and Joann Cauliflower—who reported to plaintiff, Tendering had the highest salary, followed by Strollo and then Cauliflower. (*Id.* ¶¶ 8, 55.) In early 2016, as plaintiff and Mundinger prepared their 2015 performance reviews for these analysts, plaintiff alerted Mundinger to the pay disparity between Strollo, who was male and under forty years old, and Cauliflower, an older woman. (*Id.* ¶ 57.) While Mundinger recognized that there was a large pay disparity between the two employees, Strollo had a Masters of Business Administration degree and had received an "exceeds expectations" performance rating, whereas Cauliflower had only a high-school education and had been placed on a Performance Improvement Plan. (*Id.* ¶ 59.) Mundinger claims that he raised the issue with HR anyway, but he found that there was nothing more they could do to close the pay gap, as Baxter had already raised Cauliflower's pay when she first joined Knowledge Management. (*Id.* ¶ 58.) However, two HR employees told plaintiff that they did not recall Mundinger bringing the matter to their attention. (Pl.'s LR 56.1 Resp. ¶ 58.)

In early February 2016, Mundinger reviewed plaintiff's 2015 performance, giving her a rating of "meets expectations," which was above "needs improvement" or "does not meet requirements," and he congratulated plaintiff on having "had a great year!" (Def.'s LR 56.1 Stmt. ¶ 27.) She also received a raise, by the same percentage as the other Managers of Business Operations under Mundinger's supervision. (*Id.* ¶ 31.)

Plaintiff viewed the review and the raise she received along with it as "punitive," believing that she should have received an "exceeds expectations" rating, in large part because she had identified a $1.9 million accounting discrepancy. (*Id.* ¶¶ 30-33.) Several days after her performance evaluation, plaintiff complained to HR that Baxter was retaliating against her because of her complaint against Merryman. (*Id.* ¶ 62.) When HR interviewed her, plaintiff

3

disclosed that she had attended a December 2015 offsite holiday party, to which a Baxter employee had anonymously brought, as a "white elephant" gift, "a toy bear with a penis that popped out when someone squeezed the bear's head." (*Id.* ¶ 63.) Plaintiff and Mundinger had agreed at the time that the gift showed poor judgment. (*Id.* ¶¶ 64-65.) Additionally, plaintiff reiterated to HR her complaint about the pay disparity between Strollo and Cauliflower, which she had previously made only to Mundinger. (Def.'s LR 56.1 Resp. ¶ 5, ECF No. 75.) HR Director Julie Junkin, after reviewing documents and interviewing ten individuals, including plaintiff and Mundinger, found no evidence of retaliation. (Def.'s LR 56.1 Stmt. ¶¶ 67-70.) Junkin met with plaintiff to discuss her findings, reassured her that Baxter did not intend to terminate her or eliminate her role, and offered to facilitate conversations with Mundinger to help rebuild their relationship. (*Id.* ¶ 70.)

According to Mundinger's deposition testimony, plaintiff's direct reports and peers began to complain that they were having difficulty working with plaintiff. (*Id.* ¶¶ 36-41.) Plaintiff disputes the truth of some of these complaints, pointing to to Joann Cauliflower's deposition testimony, in which Cauliflower denied making the complaints that Mundinger reported, and to copies of emails from two peers who denied having issues working with her, at least on certain matters. (Pl.'s LR 56.1 Resp. ¶¶ 36, 41.) But there were other complaints that plaintiff does not genuinely dispute. Jason Strollo did not trust plaintiff, felt that she went out of her way to make things difficult for co-workers and tried to make other departments look bad, and told Mundinger that he would leave because of his working relationship with plaintiff. (Def.'s LR 56.1 Stmt. ¶ 38; *id.*, Ex. C, Mundinger Dep. at 16:6-8, ECF No. 71-3; *see* Pl.'s LR 56.1 Resp. ¶ 38 (purporting to deny Strollo's comments about plaintiff but only because they are "statements of opinion").) Sue Tendering asked Mundinger when he was going to get rid of plaintiff because

4

she had caused serious morale issues. (Def.'s LR 56.1 Stmt. ¶ 40; *see* Pl.'s LR 56.1 Stmt. ¶ 40 (purporting to deny that Tendering said this but actually citing unrelated complimentary comments Tendering made on a 2015 performance review).)

Mundinger also received complaints about plaintiff from Solutions Architects Scott Corso and Peter Decowski, who were working with plaintiff on automating some reporting functions. (Def.'s LR 56.1 Stmt. ¶ 43.) They told Mundinger that they did not like working with her and they were frustrated with her because she kept changing the requirements for their projects, which was causing them to miss deadlines. (*Id.* ¶¶ 43-44.) At a late January 2016 meeting with Mundinger and the Solutions Architects to discuss the Solutions Architects' concerns, plaintiff was upset and emotional, denied changing her mind, and claimed that she had "never been treated like this." (*Id.* ¶ 44.) The following week, however, plaintiff emailed Mundinger that she felt she now had a "positive relationship [with] this team," and Mundinger replied that he was grateful that this meeting had "cleared the air" and "provided a good foundation for moving forward." (*Id.* ¶ 45.)

Jackie Minogue, a reporting level above Mundinger, assigned a special project on renal reporting, known as "Project Thicke," to Strollo. (*Id.* ¶ 46.) Plaintiff believed that it was inappropriate for Strollo, rather than plaintiff herself, to be in charge of Project Thicke. (*Id.* ¶ 47.) Strollo told Minogue that plaintiff, against Minogue's instructions, had shared a confidential Project Thicke slide with persons outside of KM. (*Id.* ¶ 48.) Plaintiff denied doing anything wrong, but Minogue confirmed in an August 10, 2016 email to Mundinger that plaintiff's sharing the slide was "directly against my direction and her commitment to keep this internal within the team." (*Id.* ¶ 50.)

In the summer of 2016, plaintiff applied for four internal positions within Baxter, but she was not selected for any of them. (*Id.* ¶ 71.) According to plaintiff, one of the hiring managers told her that she and Mundinger needed to "work things out." (Def.'s LR 56.1 Resp. ¶ 16.) On August 9, 2016, Mundinger told plaintiff that, if he were to give out mid-year performance ratings, he would give plaintiff a rating of "meets requirements minus" or "needs improvement." (*Id.* ¶ 15.) Neither Mundinger nor anyone at Baxter threatened to fire plaintiff or place her on a performance improvement plan, nor was plaintiff ever put on a performance improvement plan. (Def.'s LR 56.1 Stmt. ¶¶ 52-53.)

On August 29, 2016, plaintiff notified Junkin by email that plaintiff intended to resign from Baxter that day because of what plaintiff viewed as Mundinger's retaliation for plaintiff's complaint against Merryman. (*Id.* ¶ 73.) Plaintiff submitted a resignation letter, citing "retaliation . . . for reporting the physical altercation involving a long time Baxter employee." (*Id.* ¶ 74.) Plaintiff feared she was about to be fired and did not want a termination on her record. (Pl.'s LR 56.1 Resp. ¶ 74.)

On April 6, 2017, plaintiff filed a charge of discrimination against Baxter before the Equal Employment Opportunity Commission ("EEOC"), claiming to have been "constructively discharged" in retaliation for complaining of "sexual harassment" and "wage discrimination for her subordinates," and she received a right to sue letter dated April 11, 2017. On July 11, 2017, plaintiff filed this lawsuit.

## **ANALYSIS**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). The Court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The ADEA makes it unlawful for an employer to . . . discriminate against an individual 'because of such individual's age.'" *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014) (quoting 29 U.S.C. § 623(a)(1)).

In addition, Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Similarly, "[t]he ADEA provides that it is 'unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section.'" *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001) (quoting 29 U.S.C. § 623(d)). This type of discrimination is commonly known as "retaliation." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006).

Based on the similarity of the language, courts have interpreted the anti-retaliation provisions of Title VII and the ADEA to impose the same legal requirements, and they generally assume that the reasoning of cases interpreting one statute will be equally applicable to the other.

*See, e.g., Nan Wei v. Deere & Co.*, 596 F. App'x 499, 501 (7th Cir. 2015); *Gulliford v. Schilli Transportation Servs., Inc.*, No. 4:15-CV-19-PRC, 2017 WL 6759135, at *11 (N.D. Ind. Jan. 5, 2017); *EEOC v. Circuit City Stores, Inc.*, No. 02 C 4672, 2006 WL 1343173, at *4 (N.D. Ill. May 11, 2006). This Court will do the same.

"A retaliation claim requires proof that the plaintiff suffered an adverse employment action because of his statutorily protected activity; in other words, the plaintiff must prove [1] that he engaged in protected activity and [2] suffered an adverse employment action, and [3] that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).

Defendant argues that it is entitled to summary judgment because plaintiff neither engaged in any protected activity nor suffered any materially adverse employment action.

## I. PROTECTED ACTIVITY

Plaintiff claims that defendant retaliated against her for complaining about three things: (1) the incident in which Merryman grabbed her arm and shouted at her, (2) the offensive toy bear given as a white elephant gift at the 2015 holiday party, and (3) the pay disparity between Strollo and Cauliflower. Defendant argues that none of these things qualifies as an unlawful employment practice about which plaintiff could complain.

Plaintiff need not demonstrate that any of these incidents revealed any actual violation of Title VII or the ADEA. "In order to engage in protected conduct, [plaintiff] only has to show that he reasonably believed in good faith [that] the practice he opposed violated" federal employment discrimination law. *See Tate v. Exec. Mgmt. Servs., Inc.*, 546 F.3d 528, 532 (7th Cir. 2008). In its briefs, defendant cites *Hamner v. St. Vincent Hospital & Health Care Center*, in which the Seventh Circuit explained this principle as follows:

It is true that "our cases hold that an employee may engage in statutorily protected expression under section 2000e-3(a) even if the challenged practice does not actually violate Title VII." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994). It is sufficient if the plaintiff has a sincere and reasonable belief that he is opposing an unlawful practice. *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1314 (7th Cir. 1989); *see also Dey*, 28 F.3d at 1458. ***That means, for example, that even if the degree of discrimination does not reach a level where it affects the terms and conditions of employment, if the employee complains and the employer fires him because of the complaint, the retaliation claim could still be valid.***

224 F.3d 701, 706-07 (7th Cir. 2000) (internal citations altered) *overruled on other grounds by Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339 (7th Cir. 2017). Thus, "[t]he objective reasonableness of the belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into the category of conduct prohibited by the statute." *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 771 (7th Cir. 2008).

Plaintiff candidly admits that the Merryman incident had nothing to do with her age or gender, so the Court agrees with defendant that this complaint is not protected activity.[1] The other incidents are not as clear-cut. The toy bear gift, a single, isolated incident of vulgar and tasteless but non-threatening behavior at a holiday party, is nowhere near severe enough to establish a hostile work environment by itself, but under *Hamner* and *Magyar*, it is not whether the complained-of conduct reaches the required level of severity that matters; it is whether it falls into the category of conduct that the statute prohibits. The toy bear gift is certainly within the range of behavior that could provide evidence of a hostile work environment, so it falls into the category of conduct that the statute prohibits.

---

[1] This is a potentially serious admission because, based on her own resignation letter and other evidence, plaintiff appeared to believe that her complaint about the Merryman incident was the true cause of Mundinger's alleged animosity toward her, which, if true, would leave plaintiff unable to prove that protected activity actually caused defendant to retaliate against her. But the Court need not concern itself with that issue at this stage, both because it grants summary judgment on other grounds and because, even if the Court were to reach that issue, it would conclude that it is better left for determination by a jury.

9

The pay disparity between Strollo and Cauliflower also falls within the proper category of conduct. Defendant argues that the pay disparity was justified by Strollo and Cauliflower's disparate education levels and job performance histories, but regardless of whether that argument has merit, paying a younger and less experienced male employee more than an older and more experienced female employee is at least the kind of conduct that might fall within the prohibitions of Title VII and the ADEA.

Thus, with respect to the toy bear gift and the pay disparity, the Court does not find defendant's argument persuasive. Ultimately, however, it need not decide whether plaintiff engaged in any protected activity. The Court will assume for purposes of this decision that she did, but it makes no difference because the Court grants summary judgment on other grounds.

## II. MATERIALLY ADVERSE ACTION

Unlike their core discrimination provisions, the anti-retaliation provisions of Title VII and the ADEA proscribe not only those discriminatory acts that affect the terms and conditions of one's employment, but also, more broadly, any action "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Morse v. Ill. Dep't of Corr.*, 191 F. Supp. 3d 848, 861 (N.D. Ill. 2015) (ADEA context). In assessing whether an employer's action meets this standard for material adversity, the Court's inquiry is objective; it "avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Burlington*, 548 U.S. at 68-69. The Court must "separate significant from trivial harms" because "an employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor

annoyances that often take place at work and that all employees experience," which are unlikely to "'to deter victims of discrimination from complaining to the EEOC," the courts, and their employers." *Id.* at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)); *see also id.* ("Title VII . . . does not set forth 'a general civility code for the American workplace.'") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) ("[M]ere unhappiness and inconvenience are not actionable under Title VII."); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.") (internal quotation marks omitted).

Defendant argues that it is entitled to summary judgment because its actions do not amount to a constructive discharge. A constructive discharge occurs when "the plaintiff shows that [she] was forced to resign because [her] working conditions, from the standpoint of the reasonable employee, had become unbearable," either because (1) her employer subjected her to "discriminatory harassment . . . even more egregious than that required for a hostile work environment claim," or (2) her employer "act[ed] in a manner so as to have communicated to a reasonable employee that she will be terminated." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (internal quotation marks omitted). The Court agrees with defendant that plaintiff's working conditions were not so unbearable as to meet either prong of this test. Even viewing all the evidence in the light most favorable to plaintiff, she suffered, at most, the sort of "petty slights or minor annoyances," *Burlington*, 548 U.S. at 68, that are common in the workplace, not egregious harassment. *See Chapin*, 621 F.3d at 679. Further, considering that

11

plaintiff had received fair performance ratings and not been placed on a performance improvement plan, a reasonable employee in plaintiff's position would not believe that she was in any danger of imminent termination. *See id.* at 679-81.

Plaintiff does not seriously argue otherwise, nor must she. A constructive discharge is just one of many types of materially adverse actions that might satisfy Title VII or the ADEA's retaliation provisions. The critical question is not whether defendant constructively discharged plaintiff by making her conditions of employment unbearable; plaintiff need only clear the lower bar of demonstrating whether a reasonable employee would find defendant's actions materially adverse, such that an employee in plaintiff's position would be dissuaded from complaining about unlawful employment practices in the future.

In her brief, plaintiff recounts a number of allegedly retaliatory acts, including hostility from the IC department, a performance review that was not as laudatory as plaintiff felt she deserved,[2] threats of changed responsibilities, occasional reprimands, increased scrutiny, disparaging comments from inside and outside her department, and denial of her applications to transfer to other departments. (Pl.'s Mem. in Opp'n at 2-3, ECF No. 74.)

These actions do not meet the material adversity standard, either separately or in combination. Even giving plaintiff a *poor* performance review, or placing her on a performance improvement plan, would likely not be severe enough, by itself, to be materially adverse. *See Smart*, 89 F.3d at 442; *see also Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) ("[T]his Court has previously held that unfair reprimands or negative performance evaluations, unaccompanied by some *tangible* job consequence, do not constitute adverse employment

---

[2] In her brief, plaintiff claims that when she complained about this review, Mundinger told her she should "look for a role outside the company (Pl.'s Mem. in Opp'n at 2, ECF No. 74), but at her own deposition she admitted that what he told her was, "well, Donna, *if you're not happy with the review*, then maybe you need to look outside Baxter." (Pl.'s Dep. at 167:5-7, ECF No. 71-1 (emphasis added).)

actions.") (internal quotation marks omitted); *Cole v. Illinois*, 562 F.3d 812, 816-17 (7th Cir. 2009) (placing plaintiff on "employee improvement plan" that required him to submit daily and weekly schedules to supervisors not materially adverse action) (citing cases); *cf. Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 665 (7th Cir. 2011) (recognizing that written warnings are not usually materially adverse, but holding that plaintiff raised fact issue on material adversity where her written warnings concerned petty misdeeds that occurred months earlier and were coupled with restrictions on her access to her workplace). Plaintiff was not placed on a performance improvement plan at all, nor was she threatened with one, and, although she felt her performance was underrated, the performance reviews that upset her were good or, at worst, lukewarm, not negative. *See Szymanski v. Cty. of Cook*, 468 F.3d 1027, 1030 (7th Cir. 2006) (former employer's reference is not materially adverse employment action if it rates plaintiff's abilities as either "good" or "fair").

Nor is the fact that plaintiff felt an atmosphere of tension hanging over her working environment, in addition to the criticism from her supervisor, enough to get plaintiff's claim over the summary judgment hump. *See Jones*, 613 F.3d at 671 ("[C]orrective action alone does not rise to the level of an adverse employment action[, and a] plaintiff's [simultaneous,] subjective determination of tension in the workplace, without more, cannot constitute an adverse employment action absent a tangible job consequence."); *Mlynczak v. Bodman*, 442 F.3d 1050, 1061 (7th Cir. 2006) (negative performance appraisals combined with conflict with supervisor and shunning by co-workers not adverse action); *see also Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012) (neither getting a "cold shoulder" from the supervisor nor being called a "trouble maker," "cry baby," or "spoiled child" is materially adverse). Ultimately, all of the alleged retaliatory acts of which plaintiff complains fall in to the category of those

"minor . . . employment actions," *Smart*, 89 F.3d at 441, that amount to "petty slights or minor annoyances," *Burlington*, 548 U.S. at 68, or cause "mere unhappiness and inconvenience," *Lucent*, 323 F.3d at 532, which lie beyond the reach of the anti-retaliation provisions of federal employment discrimination law.

The Court is unable to identify any action defendant took against plaintiff that would qualify as materially adverse. Summary judgment for defendant is therefore appropriate. The Court need not consider whether plaintiff has adduced sufficient evidence of the causation element of her retaliation claim because she is unable to establish that she suffered a materially adverse action.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment [69] is granted. Civil case terminated.

**SO ORDERED**  ENTERED: **March 27, 2019**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**